## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| RM YOGURT HAWAII, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | |
| | § | CIVIL NO. 3:10-CV-01292-P-BK |
| RED MANGO FRANCHISING CO., | § | |
| DANIEL KIM, and DOE DEFENDANTS | § | |
| 1-20, | § | |
| | § | |
| Defendants. | § | |

## DEFENDANTS RED MANGO FC, LLC AND DANIEL KIM'S
## ORIGINAL ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS

Defendants, Red Mango FC, LLC, (formerly known as Red Mango Franchising Company, Inc.) ("RMFC") and Daniel Kim ("Kim") (collectively, "Defendants"), file their Original Answer, Affirmative Defenses, and Counterclaims to Plaintiff RM Yogurt Hawaii, LLC's ("Plaintiff") Complaint for Damages and Injunctive Relief ("Complaint") as follows:

## I.

## ORIGINAL ANSWER

### THE PARTIES

1.      Defendants are without sufficient information or knowledge to either admit or deny the allegations contained in Paragraph 1 of the Complaint.

2.      Defendants admit that, at all times relevant to the events giving rise to this suit, Red Mango Franchising Company, Inc. was a California corporation offering franchises in the State of Hawaii. However, Red Mango Franchising Company, Inc. has converted to a Texas limited liability company, and is now known as Red Mango FC, LLC.  Defendants further admit that RMFC is in the business of selling franchises for RED MANGO® yogurt stores. Defendants

admit that Plaintiff executed an Area Development Agreement to develop RED MANGO®
stores in the State of Hawaii, and entered into two franchise agreements for RED MANGO®
stores in the State of Hawaii, upon the terms and conditions as set forth in the Area Development
Agreement. Defendants deny the remaining allegations contained in Paragraph 2 of the
Complaint.

3.       Defendants admit Daniel Kim was a participant in founding the RED MANGO®
concept. Defendants deny the remaining allegations contained in Paragraph 3 of the Complaint.

4.       Defendants are without sufficient information or knowledge to either admit or
deny the allegations contained in Paragraph 4 of the Complaint.

## JURISDICTION AND VENUE

5.       Defendants admit that the U.S. District Court for the Northern District of Texas
has jurisdiction over this action and the parties. Further, Paragraph 5 of the Complaint contains
statements of law to which no response is required, but to the extent Paragraph 5 contains
allegations of fact, Defendants deny them.

6.       Defendants admit that the U.S. District Court for the Northern District of Texas is
the proper venue for this action pursuant to a valid and enforceable forum-selection clause in the
parties' written agreements. Further, Paragraph 6 of the Complaint contains statements of law to
which no response is required, but to the extent Paragraph 6 contains allegations of fact,
Defendants deny them.

## THE FACTS

7.       Defendants admit that RMFC was formed as a California corporation in 2006.
Defendants admit that the RED MANGO® concept features the sale of authentic nonfat frozen
yogurt, frozen yogurt-based fruit smoothies, and related products and services.  Defendants deny

the remaining allegations contained in Paragraph 7 of the Complaint.

8.     Defendants admit that RMFC began offering franchises for RED MANGO® stores in July 2007. Defendants deny the remaining allegations contained in Paragraph 8 of the Complaint.

9.     Defendants are without sufficient information or knowledge to either admit or deny the specific date when Daniel Kim and Alex Choi first met each other. Defendants admit that Kim and Choi had discussions regarding the development of one or more RED MANGO® stores in the State of Hawaii. Defendants deny the remaining allegations contained in Paragraph 9 of the Complaint.

10.    Defendants admit that Daniel Kim and Alex Choi discussed an Area Development Agreement to develop RED MANGO® stores in the State of Hawaii. Defendants are without sufficient information or knowledge to either admit or deny the specific date when the Area Development Agreement was first discussed between Daniel Kim and Alex Choi. Defendants deny the remaining allegations contained in Paragraph 10 of the Complaint.

11.    Defendants admit that Daniel Kim and Alex Choi met in Los Angeles, California on or about January 25, 2008, where Alex Choi executed an Area Development Agreement and Daniel Kim countersigned the Area Development Agreement on behalf of RMFC. Defendants deny the remaining allegations contained in Paragraph 10 of the Complaint.

12.    Defendants admit that Plaintiff and RMFC entered into an Area Development Agreement on or about January 25, 2008, and that the Area Development Agreement speaks for itself. Defendants deny the remaining allegations contained in Paragraph 12 of the Complaint.

13.    Defendants admit that Plaintiff and RMFC entered into an Area Development Agreement on or about January 25, 2008, and that the Area Development Agreement speaks for

itself. Defendants deny the remaining allegations contained in Paragraph 13 of the Complaint.

14.     Defendants admit that the Area Development Agreement required Plaintiff to pay RMFC an Initial Development Fee of $125,000. Defendants are without sufficient information or knowledge to either admit or deny what may have caused Alex Choi to be concerned about anything or what Alex Choi may have done regarding formation of any entity. Defendants admit that Daniel Kim informed Alex Choi that his entity should not contain the RED MANGO® trademark in its name. Defendants deny the remaining allegations contained in Paragraph 14 of the Complaint.

15.     Defendants are without sufficient information or knowledge to either admit or deny the allegations contained in Paragraph 15 of the Complaint.

16.     Defendants admit that RMFC received the Initial Development Fee of $125,000, but Defendants are without sufficient information or knowledge to either admit or deny who actually tendered the funds to RMFC.

17.     Defendants deny the allegations contained in Paragraph 17 of the Complaint.

18.     Defendants admit Alex Choi signed the Area Development Agreement. Defendants deny the remaining allegations contained in Paragraph 18 of the Complaint.

19.     Defendants are without sufficient information or knowledge to either admit or deny the allegation that: "On or about March 19, 2008, Mr. Choi found a potential site for a store in Waikiki, as well as a potential site for a store in Waikele…" Defendants deny that Mr. Choi "informed Defendants" of the forgoing. Defendants deny the remaining allegations contained in Paragraph 19 of the Complaint.

20.     Defendants admit that Daniel Kim informed Alex Choi that he would need to order specific equipment to operate RED MANGO® stores. Defendants are without sufficient

information or knowledge to either admit or deny who Alex Choi trusted—or what he or Plaintiff did—regarding equipment for the stores. Defendants deny the remaining allegations contained in Paragraph 20 of the Complaint.

21.    Defendants are without sufficient information or knowledge to either admit or deny the allegation that: "While the Waikele location fell through, Plaintiff continued to pursue the possibility of a Waikiki location…" Defendants deny that they were kept informed of such actions by Plaintiff. Defendants are without sufficient information or knowledge to either admit or deny the timeline or subject matter of lease discussions that may have occurred between Alex Choi and the "Waikiki landlord."  Defendants admit that Daniel Kim and Alex Choi had various discussions regarding the number of potential RED MANGO® stores for the State of Hawaii. Defendants deny the remaining allegations contained in Paragraph 21 of the Complaint.

22.    Defendants admit that RMFC received the Initial Development Fee of $125,000 pursuant to the Area Development Agreement, but Defendants are without sufficient information or knowledge to either admit or deny the amount paid for equipment or to whom such monies were paid. Further, Defendants are without sufficient information or knowledge to either admit or deny what actions were—or were not—taken by Alex Choi regarding the Waikiki lease and the franchise agreement for that location, nor do Defendants have any knowledge or information to either admit or deny what Alex Choi was relying on when he executed the lease for the Waikiki location. Defendants deny the remaining allegations contained in Paragraph 22 of the Complaint.

23.    Defendants are without sufficient information or knowledge to either admit or deny what actions were—or were not—taken by Alex Choi regarding the Kahala lease and the franchise agreement for that location, nor do Defendants have any knowledge or information to

either admit or deny what Alex Choi was relying on when he executed the lease for the Kahala location. Defendants deny the remaining allegations contained in Paragraph 23 of the Complaint.

24.     Defendants admit that there were franchise agreements for RED MANGO® stores in Waikiki and Kahala.  Defendants deny the remaining allegations contained in Paragraph 24 of the Complaint.

25.     Defendants admit that the Area Development Agreement required Plaintiff to construct, equip, open, and thereafter operate RED MANGO® stores within the development area. Defendants are without sufficient information or knowledge to either admit or deny what actions were—or were not—taken by Alex Choi regarding orders for products or materials that were placed with distributors. Defendants admit that RMFC informed franchisees that certain RED MANGO® stores would be offered a pomegranate flavored yogurt for sale to their customers. Defendants deny the remaining allegations contained in Paragraph 25 of the Complaint.

26.     Defendants deny the allegations contained in Paragraph 26 of the Complaint.

27.     Defendants admit that RMFC agreed to a temporary waiver of Plaintiff's 6% royalty fees that were due from the Waikiki store, from September 1, 2009 through November 30, 2009. Defendants deny, however, waiving RM Yogurt's advertising fees, gift card fees, or other ordinary reimbursable expenses.  Defendants deny the remaining allegations contained in Paragraph 27 of the Complaint.

28.     Defendants admit that RMFC agreed to a temporary waiver of Plaintiff's 6% royalty fees that were due from the Waikiki store, from September 1 through November 30, 2009. Defendants admit that RMFC provided notification that Plaintiff was improperly preventing it from withdrawing other non-royalty fees that were still due and owning from

September 1 through November 30, 2009, including without limitation, usual and customary advertising fees and RED MANGO® gift card fees. Defendants deny the remaining allegations contained in Paragraph 28 of the Complaint.

29.     Defendants admit that on or about December 11, 2009, RMFC sent Plaintiff notices of default for RED MANGO® franchises in Waikiki and Kahala, due to Plaintiff's failure and refusal to timely pay monies due and owing to RMFC. Defendants deny the remaining allegations contained in Paragraph 29 of the Complaint.

30.     Defendants deny the allegations contained in Paragraph 30 of the Complaint.

31.     Defendants admit that on or about January 14, 2010, RMFC sent a notice of termination of Plaintiff's RED MANGO® franchises in Waikiki and Kahala, due to Plaintiff's failure and refusal to cure the defaults explained in the prior notice of default on or about December 11, 2009.  Defendants admit that Plaintiff was also instructed to discontinue all use of RED MANGO® marks and trade dress. Defendants deny the remaining allegations contained in Paragraph 31.

## CAUSES OF ACTION

### Count I—Breach of Hawaii Investment Law:

### Duty to Provide UFOC

32.     Defendants repeat and incorporate by reference their responses and allegations set forth above.

33.     Defendants admit that Hawaii Revised Statute § 482E-5(b) speaks for itself. Moreover, Defendants are without sufficient information or knowledge to either admit or deny the allegation contained in Paragraph 33 of the Complaint because it calls for a legal conclusion; otherwise, Defendants deny the allegations contained in Paragraph 33 of the Complaint.

34.     Defendants deny the allegations contained in Paragraph 34 of the Complaint.

35.     Defendants are without sufficient information or knowledge to either admit or deny the allegation contained in Paragraph 35 of the Complaint because it calls for a legal conclusion; otherwise, Defendants deny the allegations contained in Paragraph 35 of the Complaint.

36.     Defendants admit that Plaintiff seeks rescission of its agreements with RMFC for the RED MANGO® franchises in Waikiki and Kahala in Paragraph 36 of the Complaint.

37.     Defendants deny the allegations contained in Paragraph 37 of the Complaint.

**Count II—Breach of Hawaii Investment Law:**

**Failure to Make Full Disclosure/Misrepresentation**

38.     Defendants repeat and incorporate by reference their responses and allegations set forth above.

39.     Defendants admit that Hawaii Revised Statute § 482E-5(b) speaks for itself. Moreover, Defendants are without sufficient information or knowledge to either admit or deny the allegation contained in Paragraph 39 of the Complaint because it calls for a legal conclusion; otherwise, Defendants deny the allegations contained in Paragraph 39 of the Complaint.

40.     Defendants deny the allegations contained in Paragraph 40 of the Complaint.

41.     Defendants are without sufficient information or knowledge to either admit or deny what Plaintiff relied upon in agreeing to sign the Area Development Agreement and in opening RED MANGO® franchises in Waikiki and Kahala. Defendants deny the remaining allegations contained in Paragraph 41 of the Complaint.

42.     Defendants admit Daniel Kim was a participant in founding the RED MANGO® concept and that he was authorized to sign the Area Development Agreement on behalf of

RMFC. Defendants deny the remaining allegations contained in Paragraph 42 of the Complaint.

43.     Defendants are without sufficient information or knowledge to either admit or deny the allegation contained in Paragraph 43 of the Complaint because it calls for a legal conclusion; otherwise, Defendants deny the allegations contained in Paragraph 43 of the Complaint.

44.     Defendants admit that Plaintiff seeks rescission of its Area Development Agreement as well as its agreements with RMFC for the RED MANGO® franchises in Waikiki and Kahala in Paragraph 44 of the Complaint.

45.     Defendants deny the allegations contained in Paragraph 45 of the Complaint.

### Count III—Breach of Hawaii Investment Law:

### Violation of Duty of Good Faith

46.     Defendants repeat and incorporate by reference their responses and allegations set forth above.

47.     Defendants admit that Hawaii Revised Statute § 482E-6(1) speaks for itself. Moreover, Defendants are without sufficient information or knowledge to either admit or deny the allegation contained in Paragraph 47 of the Complaint because it calls for a legal conclusion; otherwise, Defendants deny the allegations contained in Paragraph 47 of the Complaint.

48.     Defendants deny the allegations contained in Paragraph 48 of the Complaint.

49.     Defendants deny violations of Hawaii Revised Statute § 482E-6(1). Further, Defendants are without sufficient information or knowledge to either admit or deny the allegation contained in Paragraph 49 of the Complaint because it calls for a legal conclusion; otherwise, Defendants deny the remaining allegations contained in Paragraph 49 of the Complaint.

50.     Defendants admit that Plaintiff seeks rescission of its agreements with RMFC for the RED MANGO® franchises in Waikiki and Kahala in Paragraph 50 of the Complaint.

51.     Defendants deny the allegations contained in Paragraph 51 of the Complaint.

## Count IV—Breach of Hawaii Investment Law:

### Unfair or Deceptive Acts/Practices and Unfair Methods of Competition

52.     Defendants repeat and incorporate by reference their responses and allegations set forth above.

53.     Defendants admit that Hawaii Revised Statute § 482E-6(2) speaks for itself. Moreover, Defendants are without sufficient information or knowledge to either admit or deny the allegation contained in Paragraph 53 of the Complaint because it calls for a legal conclusion; otherwise, Defendants deny the remaining allegations contained in Paragraph 53 of the Complaint.

54.     Defendants deny the allegations contained in Paragraph 54 of the Complaint.

55.     Defendants deny violations of Hawaii Revised Statute § 482E-6(2). Further, Defendants are without sufficient information or knowledge to either admit or deny the allegation contained in Paragraph 55 of the Complaint because it calls for a legal conclusion; otherwise, Defendants deny the remaining allegations contained in Paragraph 55 of the Complaint.

56.     Defendants admit that Plaintiff seeks rescission of its agreements with RMFC for the RED MANGO® franchises in Waikiki and Kahala in Paragraph 56 of the Complaint.

57.     Defendants deny the allegations contained in Paragraph 57 of the Complaint.

## Count V—Misrepresentation

58.     Defendants repeat and incorporate by reference their responses and allegations set

forth above.

59.     Defendants deny the allegations contained in Paragraph 59 of the Complaint.

60.     Defendants are without sufficient information or knowledge to either admit or deny what Plaintiff relied upon in signing the leases for the premises of the RED MANGO® franchises in Waikiki and Kahala, or in proceeding to agree to open up and operate these franchises. Defendants deny the remaining allegations contained in Paragraph 60 of the Complaint.

61.     Defendants deny the allegations contained in Paragraph 61 of the Complaint.

62.     Defendants admit that Plaintiff seeks rescission of its Area Development Agreement and its agreements with RMFC for the RED MANGO® franchises in Waikiki and Kahala in Paragraph 62 of the Complaint. Defendants deny the remaining allegations contained in Paragraph 62 of the Complaint.

### Count VI—Breach of Contract: Area Development Agreement

63.     Defendants repeat and incorporate by reference their responses and allegations set forth above.

64.     Defendants admit that Plaintiff and RMFC entered into an Area Development Agreement on or about January 25, 2008, and that the Area Development Agreement speaks for itself. Defendants further admit that Plaintiff was provided with a uniform franchise offering circular (also known as a franchise disclosure document) prior to entering into franchise agreements for the Waikiki or Kahala locations. Defendants deny the remaining allegations contained in Paragraph 64 of the Complaint.

65.     Defendants admit that Plaintiff and RMFC entered into an Area Development Agreement on or about January 25, 2008, and that the Area Development Agreement speaks for

itself. Defendants deny the remaining allegations contained in Paragraph 64 of the Complaint.

66.     Defendants deny the allegations contained in Paragraph 66 of the Complaint.

67.     Defendants deny the allegations contained in Paragraph 67 of the Complaint.

68.     Defendants deny the allegations contained in Paragraph 68 of the Complaint.

69.     Defendants deny the allegations contained in Paragraph 69 of the Complaint.

### Count VII—Breach of Contract: Oral Franchise Agreements

70.     Defendants repeat and incorporate by reference their responses and allegations set forth above.

71.     Defendants repeat and incorporate by reference their responses and allegations set forth above. Further, Defendants deny the allegations contained in Paragraph 71 of the Complaint.

72.     Defendants deny the allegations contained in Paragraph 72 of the Complaint.

73.     Defendants deny the allegations contained in Paragraph 73 of the Complaint.

### Count VIII—Breach of the Implied Covenant of Good Faith and Fair Dealing

74.     Defendants repeat and incorporate by reference their responses and allegations set forth above.

75.     Defendants are without sufficient information or knowledge to either admit or deny whether "every contract" includes an "implied covenant of good faith and fair dealing" as alleged in Paragraph 75 of the Complaint because it calls for a legal conclusion; otherwise, Defendants deny the remaining allegations contained in Paragraph 75 of the Complaint.

76.     Defendants deny the allegations contained in Paragraph 76 of the Complaint.

77.     Defendants deny the allegations contained in Paragraph 77 of the Complaint.

## Count IX—Unjust Enrichment

78.      Defendants repeat and incorporate by reference their responses and allegations set forth above.

79.      Defendants admit that RMFC received $125,000 as the Initial Development Fee under the Area Development Agreement, and certain royalties, advertising fees, and gift card proceeds. Defendants deny the remaining allegations contained in Paragraph 79 of the Complaint.

80.      Defendants deny the allegations contained in Paragraph 80 of the Complaint.

81.      Defendants are without sufficient information or knowledge to either admit or deny the allegations in Paragraph 81 of the Complaint because they call for a legal conclusion; otherwise, Defendants deny the allegations contained in Paragraph 81 of the Complaint.

### Prayer for Relief

82.      Defendants deny the allegations in the "Prayer for Relief" section of the Complaint.

## II.

## AFFIRMATIVE DEFENSES

Defendants RMFC and Daniel Kim assert the following affirmative defenses to RM Yogurt Hawaii, LLC's claims:

1.      Plaintiff has failed to state a claim upon which relief can be granted.

2.      Plaintiff's claims are barred, in whole or in part, by Plaintiff's prior material breach.

3.      Plaintiff's claims are barred, in whole or in part, because Plaintiff failed to mitigate, minimize, or avoid its injury, if any.

4. Plaintiff's claim for punitive damages is barred because Plaintiff expressly waived any right or claim to punitive damages in the written agreement between the parties.

5. Plaintiff's claim for exemplary or treble damages is barred because Plaintiff expressly waived any right or claim to exemplary damages in the written agreement between the parties.

6. Plaintiff's claims are barred, in whole or in part, because any damage or injury sustained by Plaintiff was the result of its own acts or omissions.

7. Plaintiff's claims are barred, in whole or in part, because Plaintiff's alleged injury, if any, was caused by superseding or intervening events, acts, or omissions of other persons or entities over which Defendants have (and had) no control.

8. Plaintiff's claims are barred, in whole or in part, because Plaintiff had actual knowledge of the truth or falsity of any alleged statements.

9. Plaintiff's claims are barred, in whole or in part, by the statute of frauds.

10. Plaintiff's claims are barred because Plaintiff has failed to plead with the particularity required by Federal Rule of Civil Procedure 9(b).

11. Plaintiff's claims are barred, in whole or in part, by the doctrine of express, valid, and enforceable contract.

12. Plaintiff's claims are barred by the doctrines of laches and/or acquiescence.

13. Plaintiff's claims are barred, in whole or in part, because at all times relevant herein, Defendants conducted themselves in a commercially reasonable manner in compliance with the parties' contractual agreements and all applicable laws.

14. Plaintiff's claims are barred, in whole or in part, because Defendant RMFC acted within its rights as established in the contracts between the various parties and applicable law.

15.     Plaintiff's claims are barred, in whole or in part, by the doctrine of estoppel by contract.

16.     Plaintiff's claims are barred, in whole or in part, by the parol evidence rule.

17.     Plaintiff's claims are barred, in whole or in part, by the doctrine of quasi-estoppel.

18.     Plaintiff's claims are barred, in whole or in part, by the doctrine of unclean hands.

19.     Plaintiff's claims are barred, in whole or in part, by the doctrine of repudiation.

20.     Plaintiff's claims are barred, in whole or in part, by the doctrine of mutual assent.

21.     Plaintiff's claims are barred, in whole or in part, by the doctrine of ratification.

22.     Plaintiff's claims are barred, in whole or in part, by the doctrine of waiver.

23.     Plaintiff's claims are barred, in whole or in part, by the doctrine of discharge.

24.     Plaintiff's claims are barred, in whole or in part, because Plaintiff has sustained no injury or damages.

25.     Plaintiff's claims are barred, in whole or in part, because none of Defendants' conduct proximately or otherwise caused Plaintiff's injuries and Plaintiff's injuries were not foreseeable.

26.     Plaintiff's claims are barred, in whole or in part, by the doctrines of contributory negligence, proportionate responsibility, and comparative fault.

27.     Plaintiff's claims are barred, in whole or in part, by legal justification.

28.     Plaintiff's claims are barred, in whole or in part, because Plaintiff failed to comply with the procedures required of RED MANGO® franchisees and area developers.

29.     Plaintiff's claim for negligent misrepresentation is barred because it is based upon the subject matter of one or more contracts between the parties.

30.     Plaintiff's claim for negligent misrepresentation is barred, in whole or in part,

because the remedy of rescission is not available for such a claim.

31.     Plaintiff's claims are barred, in whole or in part, by the statute of limitations.

32.     Plaintiff's claims are barred, in whole or in part, by any and all other, applicable affirmative defenses and Defendants reserve the right to assert additional defenses as the facts of this case are developed.

## III.

## COUNTERCLAIM

Red Mango FC, LLC, formerly known as Red Mango Franchising Company, Inc. ("RMFC") files this Verified Counterclaim against RM Yogurt Hawaii, LLC ("RM Yogurt") as follows:

### A.  PARTIES, JURISDICTION, AND VENUE

1.     RMFC was a corporation that was organized under California law, but has converted to a Texas limited liability company. RMFC's principal business office is located in Dallas, Texas, and the company is authorized to do business in the State of Texas. RMFC is one of the Defendants in the underlying action to which this counterclaim is filed.

2.     RM Yogurt is a Hawaii limited liability company and is the Plaintiff in the underlying action to which this counterclaim is filed.

3.     This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 and Article III of the United States Constitution, because RMFC's counterclaims arise out of the same transaction or occurrence that is the subject matter of RM Yogurt's underlying claims in the pending suit before this Court.

4.     Venue is proper in this Court pursuant to one or more valid and enforceable forum-selection clauses signed by the parties. Further, venue is proper in this Court because a

substantial part of the events (and omissions) giving rise to this counterclaim occurred in Dallas County, Texas.

## B.  ALLEGATIONS COMMON TO ALL CLAIMS FOR RELIEF

### CONTROLLING DOCUMENTS

5.     RMFC incorporates by reference the parties' Area Development Agreement, Guarantee of Agreements, and General Release that were attached as Exhibits A, B, and C to the previously filed *Defendants' Motion to Dismiss for Improper Venue Under Federal Rule 12(b)(3)*.

### *RED MANGO®*

6.     The RED MANGO®  concept offers an upscale retail frozen yogurt store offering authentic nonfat frozen yogurt served with fresh fruit, nuts and other toppings, yogurt-based drinks and fruit smoothies, probiotic drinks, yogurt-related food items and related products and services to health-conscious consumers for dine-in consumption and take-out service under the trade name RED MANGO®.

7.     Relay International Co., Ltd ("Relay International"), a South Korean company, founded the RED MANGO® concept in 2002.  In 2006, Relay International granted Red Mango, Inc. ("RMI"), the exclusive right to own and operate and to franchise others to operate, RED MANGO® stores throughout North America.  RMI maintains its principal business address in Dallas, Texas, and is the parent company of RMFC.

8.     RMI granted RMFC the exclusive license to offer and sell RED MANGO® franchises in North America. RMFC began offering franchises for RED MANGO® stores in July 2007. A RED MANGO® franchised business is identified by certain trade names, trade dress, unique interior and exterior design and décor, service marks and trademarks, including the

principal mark "RED MANGO®" (the "Marks"), and uses a system of food production and store operating techniques which are licensed to franchisees and identify the franchised business with the RED MANGO® reputation for quality and service (the "System").  Franchisees sell products that are part of the RED MANGO® standard menu and which appeal to the appetites of health-conscious consumers.

9.      RM Yogurt acknowledged receipt of the RED MANGO® Franchise Disclosure Document on or about January 1, 2008—before RM Yogurt entered into the Area Development Agreement or franchise agreements with RMFC.

10.     On or about January 25, 2008, RMFC entered into an Area Development Agreement ("ADA") with RM Yogurt (which, at that time, was purporting to act under the name Red Mango Hawaii, LLC), for the development of multiple RED MANGO® stores in the State of Hawaii.  The ADA expressly provides that any store developed by RM Yogurt in the State of Hawaii shall pay a royalty fee equal to 6% of the store's gross sales. In addition to a 6% royalty fee, RED MANGO® franchisees are obligated to pay a 2% advertising fee based on their gross sales.  Each franchisee also incurs certain fees based on the use and sale of RED MANGO® gift cards at the franchise store. Royalties, advertising fees, and gift card charges are part of the ordinary course of dealing between RMFC and its franchisees like RM Yogurt.

11.     In or about the late summer and fall of 2008, RM Yogurt opened two RED MANGO® stores in Waikiki and Kahala (in the suburbs of Honolulu, Hawaii on the Island of Oahu).

## WAIKIKI STORE

12.     On or about August 2008, RM Yogurt opened the Waikiki RED MANGO® store.

13.     Beginning on or about August 2008, RM Yogurt began making regular monthly

ACH payments to RMFC to fulfill its Waikiki store obligations for royalty fees, advertising fees, gift card charges, and other expenses incurred in the ordinary course of business. RM Yogurt's regular payment obligations were satisfied every four weeks as part of the ordinary course of dealings between the parties. However, on or about September 2008, RMFC discovered that RM Yogurt had instructed its bank to stop all ACH payments to RMFC.

14.     RMFC contacted RM Yogurt about the ACH payment problems.  RM Yogurt informed RMFC that it was having some cash flow challenges at the store, so RMFC agreed to help RM Yogurt by waiving the 6% royalty fees for a period of three months, from September 1 to November 30, 2009.  However, RMFC did not waive (nor offer to waive) the 2% advertising fees or gift card charges that RM Yogurt incurred during that same time period, and which charges were part of the ordinary course of dealing between the parties.

15.     For the four-week period ending on October 4, 2009, RM Yogurt reported gross sales of $30,805.25.  RMFC waived RM Yogurt's royalties, but RM Yogurt still incurred advertising fees of $588.81, gift card charges of $284.08, and other reimbursable charges of $148.56.  RM Yogurt failed and refused to tender payment to RMFC.

16.     For the four-week period ending on November 1, 2009, RM Yogurt reported gross sales of $30,992.40. RMFC waived RM Yogurt's royalties, but RM Yogurt still incurred advertising fees of $582.05 and gift card charges of $163.68.  RM Yogurt failed and refused to tender payment to RMFC.

17.     For the four-week period ending on November 29, 2009, RM Yogurt reported gross sales of $29,402.15. RMFC waived RM Yogurt's royalties, but RM Yogurt still incurred advertising fees of $553.05 and gift card charges of $21.11.  RM Yogurt failed and refused to tender payment to RMFC.

18.     For the four-week period ending on December 27, 2009, RM Yogurt reported gross sales of $27,427.15, and incurred royalty fees of $1,575.78, advertising fees of $525.26, gift card charges of $1,437.57, and an NSF bank fee of $20.00.  RM Yogurt failed and refused to tender payment to RMFC.

19.     On or about December 11, 2009, RMFC sent a written demand for payment to RM Yogurt and notified RM Yogurt that failure to fulfill its payment obligations was a default of its contractual obligations.

20.     On or about December 24, 2009, RMFC sent RM Yogurt a written notice that the franchise agreement for the Waikiki RED MANGO® store was terminated. However, the notice also informed RM Yogurt that RMFC would rescind the termination if all amounts due and owing for the Waikiki store were paid by ACH transfer by December 31, 2009. RM Yogurt failed and refused to cure its financial delinquencies, so the termination of the Waikiki franchise agreement remained effective.

21.     RM Yogurt remains liable for the outstanding balance for the Waikiki store, in the amount of at least $5,899.94 (subject to adjustment based on further discovery and analysis of RM Yogurt's financial records).

**KAHALA STORE**

22.     On or about late August or early September 2009, RM Yogurt opened the Kahala RED MANGO® store.

23.     Based on the ordinary course of business dealings at the Waikiki store, RM Yogurt knew that RMFC expected it to begin making regular monthly ACH payments to RMFC to fulfill its Kahala store obligations for royalty fees, advertising fees, gift card charges, and other expenses incurred in the ordinary course of business.

24.     For the four-week period ending on September 6, 2009, RM Yogurt reported gross sales of $11,601.25, and incurred royalty fees of $674.82, advertising fees of $224.94, and gift card charges of $37.87, but RM Yogurt failed and refused to tender payment to RMFC.

25.     For the four-week period ending on October 4, 2009, RM Yogurt reported gross sales of $43,736.85, and incurred royalty fees of $2,540.64, advertising fees of $846.88, gift card charges of $744.07, and other reimbursable charges of $148.56, but RM Yogurt failed and refused to tender payment to RMFC.

26.     For the four-week period ending on November 1, 2009, RM Yogurt reported gross sales of $39,757.30, and incurred royalty fees of $2,212.73, advertising fees of $737.58, and gift card charges of $1,912.07, but RM Yogurt failed and refused to tender payment to RMFC.

27.     For the four-week period ending on November 29, 2009, RM Yogurt reported gross sales of $31,503.60, and incurred royalty fees of $1,739.77, advertising fees of $579.92, and gift card charges of $680.12, but RM Yogurt failed and refused to tender payment to RMFC.

28.     For the four-week period ending on December 27, 2009, RM Yogurt reported gross sales of $26,522.97, and incurred royalty fees of $1,537.26, advertising fees of $512.42, gift card charges of $685.31, and an NSF bank fee of $20.00, but RM Yogurt failed and refused to tender payment to RMFC.

29.     On or about December 11, 2009, RMFC made written demand for payment to RM Yogurt and notified RM Yogurt that failure to fulfill its payment obligations was a default of its contractual obligations.

30.     On or about December 24, 2009, RMFC sent RM Yogurt a written notice that the franchise agreement for the Kahala RED MANGO® store was terminated. However, the notice

also informed RM Yogurt that RMFC would rescind the termination if all amounts due and owing for the Kahala store were paid by ACH transfer on or before December 31, 2009. RM Yogurt failed and refused to cure its financial delinquencies, so the termination of the Kahala franchise agreement remained effective.

31.     RM Yogurt remains liable for the outstanding balance for the Kahala store, in the amount of at least $15,834.93 (subject to adjustment based on further discovery and analysis of RM Yogurt's financial records).

## TERMINATION OF AREA DEVELOPMENT AGREEMENT

32.     By letter dated January 14, 2010, RMFC notified RM Yogurt that due to its default under the Waikiki and Kahala franchise agreements, and the subsequent terminations thereof, RMFC was also terminating RM Yogurt's Area Development Agreement due to RM Yogurt's material breach of the Area Development Agreement.

33.     Rather than complying with the notices of termination by paying all amounts due and discontinuing all use of the RED MANGO® marks and trade dress, RM Yogurt continued operating under the RED MANGO® brand and filed the present suit on February 16, 2010.

## C.  CAUSES OF ACTION AGAINST RM YOGURT HAWAII, LLC

### Count 1: Breach of Contract

34.     RMFC realleges and incorporates herein by reference each of the factual allegations above as though fully set forth herein.

35.     On or about January 25, 2008, RMFC and RM Yogurt entered into a valid and enforceable written contract—the Area Development Agreement.  The contract provided that RM Yogurt would develop RED MANGO® stores in the State of Hawaii upon the terms and conditions as set forth in the Area Development Agreement.

36.     Thereafter, RM Yogurt opened RED MANGO® franchises in Waikiki and Kahala, with knowledge that the Area Development Agreement and franchise agreements required RM Yogurt to pay certain fees to RMFC, including without limitation: royalty fees of 6% of the gross sales, advertising fees of 2% of gross sales, charges incurred for the RED MANGO® gift card program, and other reimbursable expenses in the ordinary course of business. RM Yogurt was fully aware of its obligations because such fees and charges were expressly disclosed in the RED MANGO® Franchise Disclosure Document that was provided to RM Yogurt before it entered into the Area Development Agreement or the franchise agreements.

37.     RMFC fully performed its contractual obligations to RM Yogurt.

38.     RM Yogurt breached its contractual obligations by failing and refusing to tender payment to RMFC for royalty fees, advertising fees, gift card fees, and other reimbursable expenses.

39.     RMFC seeks liquidated damages in the amount of at least $21,734.87 ($15,834.93 for the Kahala store plus $5,899.94 for the Waikiki store). RMFC reserves the right to adjust this amount pending further discovery and investigation of RM Yogurt's financial records.

**Count 2: Quantum Meruit**

40.     RMFC realleges and incorporates herein by reference each of the factual allegations above as though fully set forth herein.

41.     RMFC provided RM Yogurt with valuable goods and services, including but not limited to, the use of the RED MANGO® brand, trademarks, and trade dress, together with RED MANGO's® proprietary recipes, products, manuals, and business system.

42.     RMFC provided these goods and services for RM Yogurt's benefit.

43.     RM Yogurt knew or should have known that RMFC expected compensation when

RM Yogurt accepted the goods and services from RMFC. Specifically, RM Yogurt received a written RED MANGO® Franchise Disclosure Document from RMFC that identified the fees associated with RED MANGO® franchises.  Further, for over one year from August 2008 until September 2009, RM Yogurt regularly tendered compensation to RMFC for the Waikiki store fees and charges, as part of the ordinary course of business dealings between the parties. Accordingly, RM Yogurt was clearly on notice that RMFC expected compensation for the goods and services it provided to RM Yogurt for the Waikiki and Kahala RED MANGO® franchises.

44.      Because RMFC expected compensation, RM Yogurt's acceptance of the goods and services without payment resulted in at least the following damages: $15,834.93 for the Kahala store, and $5,899.94 for the Waikiki store. RMFC reserves the right to adjust these amounts based on further discovery and analysis of RM Yogurt's financial records.

45.      In the alternative, RMFC seeks unliquidated damages within the jurisdictional limits of this court.

### Count 3: Promissory Estoppel

46.      RMFC realleges and incorporates herein by reference each of the factual allegations above as though fully set forth herein.

47.      RM Yogurt promised and agreed that it would compensate RMFC for receiving valuable goods and services, including but not limited to, the use of the RED MANGO® brand, trademarks, and trade dress, together with RED MANGO's® proprietary recipes, products, manuals, and business system.

48.      RMFC relied on RM Yogurt's promise by providing these goods and services for RM Yogurt's benefit. Because of the nature of the promise, RMFC's reliance was both reasonable and substantial in that RM Yogurt had already executed an Area Development

Agreement for the development of RED MANGO® stores in the State of Hawaii.

49.     RM Yogurt knew or should have known that RMFC would rely on RM Yogurt's promise.  It was foreseeable that RMFC expected compensation because RM Yogurt received a written RED MANGO® Franchise Disclosure Document from RMFC that identified the fees associated with RED MANGO® franchises.  Further, for over one year from August 2008 until September 2009, RM Yogurt regularly tendered compensation to RMFC for the Waikiki store fees and charges, as part of the ordinary course of business dealings between the parties. Accordingly, RM Yogurt knew that RMFC was relying on RM Yogurt's promise of continued payments as compensation for the goods and services provided by RMFC for the Waikiki and Kahala RED MANGO® franchises.

50.     Only if RM Yogurt's promise is enforced can injustice to RMFC be avoided. RMFC's reliance on RM Yogurt's promise resulted in injury to RMFC, which caused at least the following damages: $15,834.93 for the Kahala store, and $5,899.94 for the Waikiki store. RMFC reserves the right to adjust these amounts based on further discovery and analysis of RM Yogurt's financial records.

51.     In the alternative, RMFC seeks unliquidated damages within the jurisdictional limits of this court.

## Count 4: Unjust Enrichment

52.     RMFC realleges and incorporates herein by reference each of the factual allegations above as though fully set forth herein

53.     RM Yogurt stopped making its required payments to RMFC for the Waikiki RED MANGO® franchise on or about September 2009. Although RMFC had agreed to waive the 6% royalty fees from September 1 through November 30, 2009, RM Yogurt remained obligated to

pay its 2% advertising fee, gift card fees, and other reimbursable expenses as they came due pursuant to the parties' written agreement and ordinary course of business dealings.

54.     RM Yogurt opened the Kahala RED MANGO® franchise on or about September 2009, yet RM Yogurt never paid any of its financial obligations to RMFC arising from that location.

55.     RMFC terminated RM Yogurt's franchise agreements for the Waikiki and Kahala RED MANGO® franchises on December 24, 2009. From September 2009 through the date of termination, RM Yogurt (1) benefited from the wrongful use of the RED MANGO® marks, business system, confidential information, and trade secrets, and (2) failed to pay all royalties, advertising fees, gift card charges, and other reimbursable expenses to RMFC in return for that benefit.

56.     RM Yogurt's failure to compensate RMFC constitutes unjust enrichment and has caused at least the following damages to RMFC: $15,834.93 for the Kahala store, and $5,899.94 for the Waikiki store. RMFC reserves the right to adjust these amounts based on further discovery and analysis of RM Yogurt's financial records.

57.     In the alternative, RMFC seeks unliquidated damages within the jurisdictional limits of this court.

## Count 5: Attorneys' Fees

58.     RMFC is entitled to recover reasonable and necessary attorney fees under Section 10.12 of the Area Development Agreement, which provides that in a litigated dispute between the parties: "…[T]he prevailing party shall be reimbursed by the losing party for all costs and expenses incurred in connection therewith, including reasonable attorneys' fees for the services rendered to such prevailing party."

59.     In addition, Section 10.15 of the Area Development Agreement provides that California law governs the parties' relationship and this action. Pursuant to California Civil Code § 1717, the prevailing party in an action on a contract may recover its attorneys' fees.

60.     RMFC has retained counsel and is entitled to attorneys' fees under the parties' written agreement, California Civil Code § 1717, and applicable federal law. RMFC has incurred and continues to incur reasonable and necessary attorneys' fees together with court costs and litigation expenses. RMFC seeks its attorneys' fees, together with court costs, incurred in connection with this action.

### Conditions Precedent

61.     All conditions precedent to recovery on RMFC's claims for relief have occurred or will occur prior to trial.

### D.  PRAYER FOR RELIEF

WHEREFORE, Red Mango FC, LLC and Daniel Kim pray that RM Yogurt Hawaii, LLC take nothing on its claims, and that Red Mango FC, LLC be awarded a judgment on its counterclaims against RM Yogurt Hawaii, LLC as described herein, together with all other relief to which Red Mango FC, LLC is entitled.

Respectfully submitted,

_____

Grant A. Walsh
Texas Bar No. 24047066
grant.walsh@mullinlawpc.com
Kelly C. Ganzberger
Texas Bar No. 24065264
kelly.ganzberger@mullinlawpc.com
**MULLIN LAW, PC**
2425 N. Central Expy., Suite 200
Richardson, Texas 75080
Phone: (972) 931-0022
Fax:     (972) 931-0124

*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on July 28, 2010, a true and correct copy of this document was served on the following counsel either through the court's electronic filing system or as otherwise required by the Federal Rules of Civil Procedure:

Louise K.Y. Ing, Esq.                      John M. Vernon, Esq.
Thomas E. Bush, Esq.                       Sheree L. McCall, Esq.
ALSTON HUNT FLOYD & ING                    The Vernon Law Group, PLLC
1001 Bishop Street, Suite 1800             12770 Coit Road, Suite 850
Honolulu, HI  96813                        Dallas, TX 75251

_____

Grant A. Walsh